May it please the Court, Counsel, Lindsay Brosford, Defendant Mary Ayala. With the Court's permission, I'd like to reserve five minutes for rebuttal. Okay. Thank you. I plan to focus on the first issue regarding the specific unanimity instruction. The instruction was required because the indictment alleged and the government offered proof of multiple instances of conduct per count. The duplicity in the indictment was not cured by an election, and the problem was exacerbated by the number of instances and groupings of conduct the government offered per count. Counsel, may I ask, I'm trying to figure out what the unit of prosecution is here. Imagine a hypothetical situation where you have an employee of an organization that gets more than $10,000 a year in federal funds, and every day for a year he goes into the office and takes $100 in cash out of the drawer. So by the end of the year, he's got $36,500, seven times the $5,000 threshold. Do you think he has committed one offense, seven offenses, some other number? Your Honor, I think that the clearest example in case law that we have is the decision from the First Circuit in Newell, which explains that the unit of prosecution is really tied to the statutory $5,000 threshold. And we know, and it's not in dispute in this case, that the government can aggregate individual acts. So in your case, individual takings each day to meet the $5,000 statutory threshold. But when the government makes those elections, let's say in your hypothetical example, the government makes three elections, say, you know, we have this grouping that, you know, this group is very similar, group A, group B is very similar. So we're going to charge those, allege those under the same count. And then group C, we're going to allege this group under the same count. Each is over the $5,000 threshold. There has to be a specific unanimity instruction to ensure that the jurors agree as to which groupings of conduct the defendant committed. So, counsel, I mean, you cite the Newell case where the court found that the plain error standard applies like here. And the Newell court found that there wasn't plain error. I mean, I concede that the Newell court said plain error review may prove to be cold comfort for similarly defective charging instruments going forward. But this is a court, this is the First Circuit. So we've never said that. So explain to me why the fact that the Newell court said that means that the plain error standard is met here. Thank you. Yeah, and I was going to point the court to that exact quotation in Newell. But in this case, in particular, in this circuit, the circuit's interpretation of the statute is consistent with the way that the court interpreted the statute. And that's Paisano, where the court said that there could be individual counts, individual convictions for separate takings. Additionally, in Newell, the reason why the court didn't reach the issue as plain error is because there was countervailing authority in that circuit. So the court had to overrule a case. The court said, it's not plain error. But as Your Honor notes, but in moving forward, it will be. In addition, and I think maybe most importantly, is that there is longstanding precedent in this circuit about when a unanimity, a specific unanimity is plain error. The failure to give the unanimity instruction is plain error. And, you know, in Lapierre in 2015, this court held, for example, that in a case where there were two separate conspiracies, you know, proof was offered of two separate conspiracies under a single count, a specific unanimity instruction was required. And the failure to give it was plain error. So here we have the opposite situation of Newell. We have, you know, clear precedent about when a specific unanimity instruction is required. And the only interpretation of section 666 indicates that the unit of prosecution is by transaction. So, counsel, I mean, it's not clear to me that the authority in the Ninth Circuit says what you say it says, but let's pass over that for the minute. The government says that it doesn't matter because it's harmless in any case, because the evidence of your client's guilt is overwhelming. Although there's really not much in the government's brief as to specificity on that point. Why isn't the government right here that even if we want to have some statement, in our opinion, in this case, like the First Circuits, why isn't the overwhelming nature of the evidence enough for us to say this error isn't plain? Again, I would point this court to the decision in Lafayette, where this court said that the mode of inquiry when analyzing whether it's plain error and whether to, you know, exercise review and reverse in a case like this, isn't whether on reversal there would be an acquittal if, you know, if a specific unanimity instruction was required. Rather, plainer review is required when there's a genuine risk of jury confusion. So we're not looking at, you know, we're not asking the appellate court to reweigh the evidence and say, well, she would. But genuine risk of jury confusion doesn't mean genuine risk of jury confusion in the abstract. It means genuine risk of jury confusion in the case at bar. Yes. Explain to me why what the government describes as the overwhelming nature of the proof of your client's guilt wouldn't obviate any possibility of jury confusion here. Okay, so two answers. And, you know, first, kind of responding to the argument about, you know, the nature of the proof in this case. But I do also want to push back on what we're talking about when we're talking about jury confusion and whether or not, you know, the evidence is substantial, and it would end in acquittal on reversal. But on the first piece, to answer your Honor's question, what the government is referring to when they say that the evidence was overwhelming is the contract that the organization had with the state of Oregon. And the government's position is that, you know, these expenditures were clearly unauthorized under the contract. And so, you know, there's really no way that the jury could have reached any other conclusion, except that Ms. Ayala misapplied the funds. Well, I think it's a little bit more than that. I think it's not just this is some technical contract based spending. I think the government is saying that your client was clearly using these funds for what were obviously personal expenses. And what the government was required to prove, you know, was a culpable mental state. And Ms. Ayala produced evidence, for example, that she was operating with a board of directors who authorized many of the expenditures that the government characterized as illegal. For example, the restaurant venture, the recording studio venture, the rent payments. Probably. Does it make any difference who the board of directors is in a particular case? Because the government offered substantial proof on the non-independence of the directors here. You know, that may matter to the jury, but it's just not an issue that could weigh, you know, one way or the other when we're talking about appellate review. At this point, all that Ms. Ayala has to establish is a genuine risk of jury confusion. And when the court is talking about a genuine risk of jury confusion, what they're talking about is a risk of a non-unanimous verdict. So in cases where there wasn't a genuine risk of jury confusion, for example, the arguments of the parties, for example, made it very clear to the jurors which instances of conduct the government was relying on. Or if there wasn't a formal election, you know, there was something like it, or some, maybe not the perfect specific unanimity instruction, but something indicating to jurors that they have to actually agree on the conduct. In this case, we really have the opposite. We have multiple transactions, multiple groupings of transactions, and the government taking the position that there's, you know, illegal conduct that exceeds $5,000. There's nothing that indicates to the jurors that they need to agree regarding the instance of conduct that it finds constitutes each count. And I understand your challenge here is limited to the instructions, but is it your view that the indictment was also defective? Yes, Your Honor. And so what should the indict... I mean, you know, they're alleging, you know, as I understand it, thousands of transactions. But what should the indictment have looked like if they wanted to be able to present all of that in trial? Yeah, thank you. And I guess I should clarify that, you know, the indictment is duplicitous, but that could have been cured by an election. Because there wasn't an election, there needed to be a specific unanimity instruction. So they do kind of flow together. Maybe I misspoke when I said that the indictment was defective. But really, you know, if you look at the indictment, I think it really shows the problem that necessitated the specific unanimity instruction. So I'm on excerpt of record 33 to 34. The indictment alleges that Ms. Ayala engaged in $25,000 of illegal transactions at retail stores, $18,000 at the restaurant venture, $50,000 at the recording studio. I would imagine that the government's position would be that any of those alone would constitute the offense, right? Like, if we took two away, I would imagine the government would argue that Ms. Ayala was still guilty of... Well, that would seem to be what section 66 says. Right, exactly, exactly. And if that's the case, then those individual groupings of transactions are alone separate instances of the criminal conduct. So we have an indictment that's duplicitous because there are multiple instances of criminal conduct alleged. And because, you know, there was no election or there was no indication to the jurors to agree, there's a substantial risk in this case that the verdict was not unanimous. Well, just because, well, the indictment can be fixed if special interrogatories are sent to the jury, correct? Yes. Okay, so that necessarily means that there's nothing inherently wrong with the indictment because it can be fixed. And that is up to the defendant to do, isn't it? Yes, Your Honor, I agree that. And I misspoke when I said that the indictment was defective. But this court has held that when you have a duplicitous indictment, again, and there is no election, or I think Your Honor's example is an excellent one, you know, special verdict form that indicates to the jurors that they have to agree. In the absence of all of those things, it's plain error for the district court to fail to instruct the jury that it must agree regarding the instance of conduct. All right, did you want to for the remainder of your time, counsel?  All right, Ms. Jarrett. Thank you, Your Honor. May it please the court, Julia Jarrett, on behalf of the United States. The jury's not required to hear a special unanimity instruction in this case because there's just one victim, there's just one perpetrator, and just one scheme. There is no evidence that there was any confusion on the jury's part as to what scheme occurred, who the perpetrator was, and the victim that the government alleged. Just like an overt act in a conspiracy or a means, particular means in a crime, the jury does not need special unanimity on any particular transaction. So your view, counsel, let's take a hypothetical where there are three separate and discrete $4,000 alleged embezzlements that as long, that are separate incidents, but they're all part of the potential for one count, that if a defendant requested a unanimity instruction that you all must agree on which two or three of the fours equals the 5,000 or more, that the defendant would not be entitled to that, and that you could have a guilty verdict if you don't have 12 jurors agreeing on the same two of the 4,000s. Your Honor, if those three transactions came from the same victim, was perpetrated by the same person, and was done in the same way, then yes, there would not be a requirement for a special unanimity verdict because as the Richardson Court instructs, it doesn't matter what the brute facts underlying an element, as long as the jury agrees that the element is met. So in this case, it doesn't matter whether the jurors agreed that it was the Louis Vuitton purchase and the MedSpa that combined to make the $5,000 threshold, or whether it was the home innovations all on its own. The Richardson- I mean, you said a couple of times in your answer to Judge Bennett's question that it was part of the same scheme or done in the same way. Does that mean that if you had sort of some embezzlement and some stealing, I mean, maybe you stole the organization's car, that you wouldn't be able to combine those? I guess I'm wondering, where are you getting the limitation that it be in the same way or from the same scheme? So when I look at the case law, what jumps out to me is that the cases make a distinct division between different types of activity. Pacey, you know, it was different extortionate conduct. In Lapierre, there were two different conspiracies. So when you look at this case, she is doing the exact same thing over and over again. She's withdrawing money or spending money out of Give Us This Day's bank account at will and continues to do that over a long period of time. There's no distinct victim and there's no distinct other way of it occurring. So all of that, the jury doesn't need to find which of those proofs add up to prove the element. In answering that, and you did this before, you seem to stumble over the word element. Are these elements you're talking about or are they means? So the elements of the crime is the threshold of $5,000. And the transactions that make up that $5,000 element are merely different proofs to meet that element. Are you equating the word proof with means, means of committing the crime, totaling up to the elements? No, Your Honor. I think the means in this statute are things like embezzle and convert. Those are the means of the crime. Whereas this is actually different proofs to prove up the same element. And that Sanderson case is, or sorry, the Gonzalez case is very clear that it says that these are just distinct proofs of the same act to prove up the same element. And when you have distinct proofs, the jury does not have to agree that one jury might be persuaded by some facts, another juror might be persuaded by other facts, and it doesn't matter. And part of your argument, counsel, in your brief is that even if we were to disagree with you as to what the case law establishes, that what you've described as this case law would by itself mean that for that reason, any error here couldn't be plain if we agree the cases could be read that way. And if we didn't. Precisely, Your Honor, this court does not have any binding authority on point demanding a special unanimity instruction in a case like this. Without that, it's very difficult to find that there's plain error. And even when you look beyond our circuit, the cases generally support that when you have a single defendant engaged in a single scheme against a single victim, the jury does not need to be unanimous as to how the defendant stole that money. And that's very clear when you look at the Sanderson case in the Sixth Circuit. The Sanderson case determines that there were two different types of theft in the same count. One was theft of property. One was theft of time. Both exceeded the $5,000 threshold on their own. But Sanderson court felt that they were properly combined in the same count because it was under the same, essentially the same scheme. Suppose that we think that there was an error and that it was plain. Could you address prongs three and four? Because the defendant says, some of these transactions, I had an argument that some of the retail purchases were actually authorized. Some of the travel might've been on business for the organization. And so there was a risk that the jury might not have agreed on which of the transactions were illegitimate. So what's your answer to that? Yes, Your Honor. So as you pointed out, there were over 12,000 transactions that the defendant took from Give Us the State Bank accounts. And when you look at that just vast amount of evidence, most of them were below $5,000. Only 44 transactions were actually over $5,000, but most of them were below.  that's an overwhelming amount of evidence to show the defendant stole more than $5,000 in any one year period, which is what the indictment allows or chart alleges. There are no further questions on that issue. I'm happy to turn to the forfeiture and loss calculation issue. For that issue, a district court properly concluded that the defendant's piggy make method of accounting did not fall within the exemption under subsection C. The court gave credence to the statutory language, as it should have, that only bona fide salary or expenses paid in the usual course of business are exempted. And there was nothing usual or normal about how the defendant took money from this bank account. And it was clearly way outside acceptable commercial or business practices that Congress intended to exempt. The district court properly applied that statute in determining by a preponderance of the evidence that the transactions were proceeds and available for forfeiture. District court further properly applied the statute in determining what qualified for loss in saying that it was no less than $550,000 and determining what she owed in restitution to the IRS. When you look at Ms. Ayala's own statements as to the salary issue, her own statements prove that she did not take bona fide, was not paid in the usual course of business. And that was by her own design. Her personal income tax filings indicate she did not receive any salary from Give Us a Stay. She did not claim any of that money, any salary on her personal income taxes whatsoever. And so when it was advantageous for her to claim that she did not have any income from Give Us a Stay so she could avoid taxes, she took it. And now when it's advantageous for her to say that she did have a salary and was paid a salary in the usual course of business, she's reversing course. And the government posits that she cannot have both ways. I want to point out, the defendant raises a question about whether the district court asks the right question in its analysis. Government agrees that we can only forfeit proceeds in this case. That is clear. But what is proceeds turns on the violation. And so that turns on an interpretation of 666. Proceeds equals money obtained in violation of a crime of conviction. So therefore, you have to look at 666 and 666-C to determine what are proceeds. And the court did that. It determined that these monies were obtained in violation of 666-A1 and considered 666-C. It says the government has demonstrated the judgment sought otherwise represents the money defendant obtained as proceeds of her convictions under 666. And it goes through reasons to support it. So the district court not only asked the right question, they answered it and they provide reasons for support. If the court has no further questions, I'll submit and ask the court to affirm on both issues. Thank you, counsel. Ms. Burroughs. Thank you, your honor. I disagree with the government about the state of the case law in this circuit about the unit of fraud. And the point that United States versus Pei Chao, it's an unpublished opinion at 715 Federal Appendix 782. So the court in that case held that courts did not err by sentencing defendants on multiple counts of violating the statute. And the court says like the federal mail fraud statute or a 666-A1A permit a separate count for each illicit transfer. If that, you know, if this is the government's position, it will need to say that it's clear decision was incorrect. And that really if the government's position is that there is one scheme here, it's, you know, everything about the scheme is identical or indistinguishable, then, you know, there should count. We have five counts and we have an indictment that alleges multiple bundles of transaction that are substantially dissimilar. Especially to Ms. Ayala, when her defense is tailored to the categories of transactions that the government has bundled. So for example, for the retail, or I'm sorry, the restaurant venture, she produced evidence that a state had advised her to actually seek out other business opportunities to fund the work. Ms. Burrows, I think we all understand your argument that you may not be able to pinpoint exactly which transactions are bundled, or whether you take an individual transaction, there may not have been unanimity there. But my question is, as to plainness, isn't there's a Sixth Circuit case, I think it's called Valentine. Doesn't that take a different approach in a unit of prosecution, different than Newell did? Well, Your Honor, I would say... Are you familiar with that case with Valentine? I'm not. I mean, my answer, I think is either way, which is that Newell couldn't be more clear. And the only authority in this interprets the statute consistent with Newell. That's Unico. That's Page House. Oh, okay. There are... Do you know whether there are cases from other circuits that differ from Newell? The government cites Sanderson, but my reading of that case is different than the government's. I think that the government is conflating means and instances. So I would say that Newell is the standard and that circuits, especially subsequent to Newell, have followed it. So in a traditional plainness question where you have cases from other jurisdictions that are contradictory and no precedent from the jurisdiction in question, I hear the Ninth Circuit, that's almost by definition plainness, correct? Or lacking in plainness, right? No. It's plain because of the case law in this circuit about when a special instruction is reflected. And then on top of that, Newell specifically is applying a plain error analysis to section 666. And then Page House is kind of a piece that is the Ninth Circuit's interpretation of the statute is consistent with Newell. So I would submit that it was plain error. All right. Thank you, counsel. I'm sorry, Judge Murphy. Did you have any additional questions? No, I have nothing else. All right. We thank counsel for their helpful arguments and this case will be submitted. The final case on the argument calendar today is Yap versus the commissioner.
judges: Murphy, Bennett, Miller